MARY L. BRANCH ET AL. *vs.* ALFRED C. LEWERENZ.

Second Judicial District, Norwich, October Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

In 1867 the State authorized the city of New London to acquire title to certain land on the Thames River, by condemnation proceedings if necessary, and when acquired, to convey it to the United States to be held for naval purposes. The plaintiffs' ancestor—who in 1867 owned said land and under whom they claimed—was a party to the condemnation proceedings instituted by the city, appeared before the judge of the Superior Court by whom the appraisers were appointed and their doings and report confirmed, and was fully heard ; he also accepted the money awarded to him in payment of the land, and took no appeal, nor did he in any way challenge the validity of the proceedings. *Held* that under these circumstances the plaintiffs could not now successfully raise the question of the constitu-

tionality of the Acts under which the State and city acted in condemning the land, inasmuch as that question was, as between the parties, *res judicata.*

Whether an Act of the legislature, through which a State attempts to exercise its power of eminent domain for the benefit of the United States, is constitutional or not, *quære.*

The unconstitutional portion of an Act will not invalidate other provisions which are in themselves valid, unless the two are so mutually connected and dependent as to warrant a belief that the legislature intended them to stand or fall together as a whole.

Argued October 21st—decided December 5th, 1902.

ACTION to recover possession of a certain tract of land, brought to the Superior Court in New London County and tried to the court, *Ralph Wheeler, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiffs. *No error.*

The case is sufficiently stated in the opinion.

*Charles F. Thayer*, with whom was *John L. Branch* of New York, for the appellants (plaintiffs).

*Francis H. Parker*, United States District Attorney, for the appellee (defendant).

TORRANCE, C. J. This action is brought by Mary L. Branch and her husband to recover possession of the land described in the complaint, which Mrs. Branch claims to have inherited and to own as sole heir of John R. Bolles, who died in 1895. The land in question is now, and for many years past, in connection with other contiguous land, has been used by the United States for naval purposes. The defendant is an officer in the United States Navy, who, in behalf of the United States, has been, since June 5th, 1899, in possession of the land in dispute, as part of the land near New London used for naval purposes. He makes no claim to the land in dispute save in his official capacity and in behalf of the United States. It is conceded that John R. Bolles owned said land in fee in 1867.

One of the defenses in the case is, that in 1867 his title in

fee was taken by virtue of certain condemnation proceedings set out in the record, and ultimately became vested in the United States. The plaintiffs claim that the Act under which said condemnation proceedings were had was unconstitutional, and therefore did not divest the title of Bolles to said land; and one of the important questions in the case is whether the plaintiffs, with the judgment in the condemnation proceedings in full force, can now make this claim. The facts bearing upon that question are, in substance, the following: In March, 1867, an Act of Congress authorized and directed the Secretary of the Navy " to receive and accept a deed of gift, when offered by the State of Connecticut, of a tract of land in the Thames River, near New London, Connecticut, with a water front of not less than one mile, to be held by the United States for naval purposes." 14 U. S. Stat. at Large, p. 489. In July, 1867, in order to enable the State to offer to the United States a gift of the kind above-described, the legislature of this State (Public Acts of 1867, Chap. 137) authorized the governor to appoint three commissioners to select and designate a tract of land answering the above description, and authorized the city of New London to acquire title to the land which should be so selected and designated, " by purchase or otherwise in trust, and for the purpose of conveying the same to the United States." It further provided that if the city and the owners of the land so to be selected could not agree as to the purchase of it, the city might take the land, upon making compensation to such owners in the manner provided in certain sections of chapter 4, Title 37, of the General Statutes, Revision of 1866. The Act of July, 1867, above referred to, also provided, in effect, that after the city had obtained the title to said land said title should be conveyed to the United States for naval purposes.

In October, 1867, the governor appointed three commissioners, pursuant to said Act, and they subsequently, in cooperation with an agent of the federal government, selected and designated a tract of land on the east side of the Thames River near New London, answering to the description in the

Act of Congress aforesaid, which included the premises in
dispute.   Afterwards, in December, 1867, the city of New
London, being unable to agree with the owners of said land
for the purchase of the same, brought its petition, under the
provisions of the statutes above referred to, before the *Hon.
John D. Park*, a judge of the Superior Court, praying for
the appointment of commissioners of appraisal, and making
all the parties interested in said land, including John R.
Bolles, parties to said proceedings.   This petition, after due
notice to all concerned, was fully heard, and commissioners
of appraisal were duly appointed.   Said commissioners, after
notice to and hearing of all parties interested, reported their
doings in writing to said judge, who, after notice and hear-
ing, confirmed said doings and report.   All the proceedings
in the matter of said petition before said judge were in con-
formity with the aforesaid statutes, and all the files and
records in said matter were recorded at full length in the
records of the Superior Court in New London county, and
in the town clerk's records of the town where said land lay.
John R. Bolles appeared in person and by attorney before
said judge and before said commissioners of appraisal, and
was fully heard.   The sum of money ordered to be paid to
John R. Bolles for the land in dispute, in the order of con-
firmation, was duly paid to him by the city of New London,
and he accepted the same, and took no appeal or proceed-
ings in error of any kind from the action of said judge or of
said commissioners of appraisal.

In April, 1868, the State of Connecticut acting by its duly-
appointed agents, and the city of New London, executed and
delivered to the Secretary of the Navy, for naval purposes,
a deed conveying the premises so acquired by the city of
New London in and by virtue of said condemnation proceed-
ings, including the land here in dispute, and said deed was
received and accepted by said Secretary in behalf of the
United States.   On or before July 1st, 1868, the United
States took possession of all the premises thus conveyed to
it, claiming title thereto, and has continued in the exclusive
possession thereof ever since, and has expended for the use

and improvement thereof for naval purposes large sums of money.   It did not appear in evidence that any city meeting of the city of New London was held prior to the condemnation proceedings, for the purpose of authorizing the city officials to acquire the land in question by purchase or condemnation proceedings ; but afterwards, in March, 1868, at such a meeting duly warned and held the mayor of said city was duly authorized, in behalf of the city, to convey to the United States the land which the city had acquired by the condemnation proceedings.

Upon these facts the plaintiffs claimed, in effect, among other things, that the Act of July, 1867, and the other State legislative Acts, above referred to, under which the land in dispute was taken, were unconstitutional, because the State could not, either directly or through the city of New London, exercise its right of eminent domain, as in this case, simply for the benefit of the United States ; and that consequently the condemnation proceedings relied upon were null and void.   This claim the trial court in effect overruled.

Whether a legislative Act, through which a State attempts to exercise its power of eminent domain for the benefit of the United States, is or is not constitutional, is a question upon which the courts appear to be divided in opinion.   Certain courts have held it to· be valid; *Reddall* v. *Bryan*, 14 Md. 444; *Gilmer* v. *Lime Point*, 18 Cal. 229; and *Burt* v. *Merchants' Ins. Co.*, 106 Mass. 356 ; while certain others have held, or appear to hold, it to be invalid; *Trombley* v. *Humphrey*, 23 Mich. 471; *Kohl* v. *United States*, 91 U. S. 367; *Darlington* v. *United States*, 82 Pa. St. 382.   But in the case at bar we have no occasion to consider this question, for we think the plaintiffs cannot successfully raise it in this case. They claim under Bolles, and if he in his lifetime was bound by the proceedings of condemnation, they are also bound.

Under the State legislation here in question, the State attempted to do two things : (1) in the exercise of its power of eminent domain, to select and take the land by a direct legislative Act, through certain legislative agents, the taking to be complete when the conditions imposed by the Act had

been complied with; (2) to select a tribunal before which the parties in interest might be heard upon all judicial questions which might legitimately arise in a proceeding of this kind. If we assume, for the purposes of argument, that the legislature has no constitutional power to do the first of these things, it does not follow that it had no power to do the second. It is an established principle that a statute may be invalid as to some of its parts and good as to others, and that the unconstitutionality of one part will not invalidate another part, unless the two are so mutually connected and dependent as to warrant a belief that the legislature intended them to stand or fall together as a whole. *State* v. *Wheeler*, 25 Conn. 290, 299. In the case at bar we think that those parts of the Acts in question, which selected the tribunal of condemnation and provided for its method of procedure to a certain extent, may well stand, even though the legislative Act attempting to appropriate the land, should be held to be unconstitutional. These Acts selected, but did not create, the tribunal for the completion of the condemnation proceedings. That tribunal was in effect the Superior Court, and its power to act in the premises, and to pass upon such constitutional questions as might properly be brought before it, existed independently of the Acts in question; and the validity of its decisions did not depend upon the constitutional power of the State to take the land for the benefit of the United States. That was one of the questions which might come before the tribunal for decision; and its jurisdiction was ample to consider and decide such a question, either for or against the right of the State, without affecting the power and jurisdiction of the tribunal.

Before such a tribunal Mr. Bolles appeared and was fully heard upon all questions respecting the taking of his land which he desired to raise. Before it he might have made, had he chosen to do so, the very claim made by the plaintiffs in this case as to the constitutional right of the State to take his land for the benefit of the United States, and from its decision upon that point, if adverse to him, he had the right of appeal. Whether he in fact made any such claim before that

tribunal is of no consequence: he had the right to do so. That tribunal decided that the State did have the power to take his land for the benefit of the United States, for it appointed appraisers to value his land. From that decision Mr. Bolles took no appeal, as he might have done. *New York, N. H. & H. R. Co.* v. *Long,* 69 Conn. 424, 437; *New Milford Water Co.* v. *Watson,* 75 id. 237. On the contrary, he accepted the damages subsequently awarded to him for the taking of his land, and ever after retained the same without in any manner contesting the validity of such taking. That judgment of the tribunal in favor of the constitutional right of the State to take the land of Mr. Bolles still stands unreversed and in full force, and under it he has been paid the full appraised value of the land so taken. Under these circumstances we think the question as to the constitutional right and power of the State to take the land in question, under the condemnation proceedings, is, as between the plaintiffs claiming under Bolles and the United States claiming under the State of Connecticut, *res judicata,* and is not available to the plaintiffs in this collateral proceeding.

It follows from this that, as between the plaintiffs and the United States, the condemnation proceedings must be held to be valid, and consequently that Mr. Bolles was thereby divested of all title to the land in question, at least so long as it should be used for the purposes for which it was taken; and this being so, the plaintiffs' right and title to recover in this suit fails.

The plaintiffs, in the court below, further claimed, in substance, that upon the facts found the land taken under the condemnation proceedings here in question had been abandoned and was no longer used or needed for naval purposes, and consequently that the title thereto and right to the use thereof was again in the original owners or their representatives.

The first part of this claim, upon which the last part depends, is not sustained by the record. The court has found, and we think correctly, as a conclusion of fact, that the prop-

erty has not been abandoned, but is still used and held by the United States for naval purposes.

It is unnecessary to pass specifically upon the other rulings complained of. They all rest upon the theory of the constitutional invalidity of the title of the United States, and the right of the plaintiffs to assert that invalidity; and are therefore necessarily disposed of by the views we have already expressed.

There is no error.

In this opinion the other judges concurred.