MILTON AMSEL ET AL. *v.* CLARENCE G. BROOKS ET AL., DENTAL COMMISSION OF THE STATE OF CONNECTICUT

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued April 6—decided May 18, 1954

*John J. Darcy,* for the plaintiffs.

*Louis Weinstein,* assistant attorney general, with whom, on the brief, was *William L. Beers,* attorney general, for the defendants.

BALDWIN, J. The plaintiffs, who are partners doing business as the Amsel Dental Laboratory, brought an action in the Superior Court against the defendants, who comprise the dental commission of the state of Connecticut, asking for a judgment declaring unconstitutional "An Act concerning the Practice of Dentistry," being No. 486 of the Public Acts of 1953. General Statutes, Cum. Sup. 1953, §§ 1696c, 1697c. By stipulation, the case has been reserved for the advice of this court upon the questions set forth in the footnote.[1]

The stipulated facts may be abbreviated as follows: The plaintiffs have been carrying on the business of a dental laboratory in New Haven and Bridgeport. They are not licensed dentists. They furnish, supply, construct, reproduce, and repair prosthetic dentures, bridges, appliances and other structures to be worn in the human mouth. When they construct an original denture, they do so from

---

[1] "1. Is Section 1 of Public Act No. 486 (Section 1696c, 1953 Supplement to the General Statutes) unconstitutional because it violates the rights of the plaintiffs under the 14th amendment to the Constitution of the United States?

"2. Is Section 1 of Public Act No. 486 (Section 1696c, 1953 Supplement to the General Statutes) unconstitutional because it violates the rights of the plaintiffs under Article 1, Section 1 of the Constitution of the State of Connecticut?

"3. Is Section 1 of Public Act No. 486 (Section 1696c, 1953 Supplement to the General Statutes) unconstitutional because it violates the rights of the plaintiffs under Article 1, Section 10 of the Constitution of the State of Connecticut?

"4. Is Section 1 of Public Act No. 486 (Section 1696c, 1953 Supplement to the General Statutes) unconstitutional because it violates the rights of the plaintiffs under Article II and III of the Constitution of the State of Connecticut?"

an impression or cast made by a duly licensed dentist. In conducting their business, the plaintiffs advertise to the public that they will furnish, supply, reproduce or repair prosthetic appliances. They contract directly with the members of the public and deliver their products directly to their customers.

At its 1953 session, the General Assembly enacted "An Act concerning the Practice of Dentistry." Cum. Sup. 1953, §§ 1696c, 1697c. The first section of the act was a re-enactment, in part, of § 4458 of the General Statutes, as amended by § 921b of the 1951 Cumulative Supplement in certain particulars not pertinent to this case. Section 4458 defined what conduct constituted the practice of dentistry. The 1953 legislation now being questioned enlarged the definition to embrace every person "who, directly or indirectly, by any means or method, furnishes, supplies, constructs, reproduces or repairs any prosthetic denture, bridge, appliance or any other structure to be worn in the human mouth, except on the direction of a duly licensed dentist, or who places such appliance or structure in the human mouth or attempts to adjust the same, or delivers the same to any person other than the dentist upon whose direction the work was performed, or who advertises to the public, by any method, to furnish, supply, construct, reproduce or repair any prosthetic denture, bridge, appliance or other structure to be worn in the human mouth. . . ." This enlargement of the definition of the practice of dentistry, when read in conjunction with § 4446 of the General Statutes, providing that no person shall engage in the practice of dentistry without a license, has the effect of bringing the additional acts within the prohibition of § 4446. By § 2 of the 1953 act (§ 1697c), the dental commission is required to appoint three licensed den-

tists to be a grievance committee in each county. Section 1698c of the 1953 Cumulative Supplement should be mentioned at this point because it prescribes penalties for violations of the statutes relating to the practice of dentistry and gives the dental commissioners power to apply to the courts for an injunction restraining such violations. The first section of the 1953 act, which is the one questioned directly, appears in full below.[2] If the plaintiffs con-

---

[2] "Sec. 1696c. PRACTICE OF DENTISTRY DEFINED. STUDENTS EXCEPTED. Any person who shall own or carry on a dental practice or business, or who, by himself or by his servants or agents or by contract with others, shall perform any operation on or make examination of, with intent of performing or causing to be performed any operation on, the human teeth or jaws, or who shall describe himself by the word 'Dentist' or letters 'D.D.S.' or 'D.M.D.,' or in other words, letters or title in connection with his name which shall in any way represent such person as engaged in the practice of dentistry, or who shall diagnose or treat diseases or lesions of the human teeth or jaws, replace lost teeth by artificial ones, attempt to diagnose or correct malposition thereof, or who, directly or indirectly, by any means or method, furnishes, supplies, constructs, reproduces or repairs any prosthetic denture, bridge, appliance or any other structure to be worn in the human mouth, except on the direction of a duly licensed dentist, or who places such appliance or structure in the human mouth or attempts to adjust the same, or delivers the same to any person other than the dentist upon whose direction the work was performed, or who advertises to the public, by any method, to furnish, supply, construct, reproduce or repair any prosthetic denture, bridge, appliance or other structure to be worn in the human mouth, or gives estimates on the cost of treatment, or who shall advertise or permit it to be done by sign, card, circular, handbill or newspapers, or otherwise indicate that he, by contract with others or by himself, will perform any of such operations, shall be deemed as practicing dentistry or dental medicine within the meaning of this chapter. Any person who, in practicing dentistry or dental medicine, as defined in this section, shall employ or permit any other person except a licensed dentist to so practice dentistry or dental medicine shall be subject to the penalties provided in section 1698c. The provisions of this chapter shall not prevent any practicing physician or surgeon from treating lesions or diseases of the mouth and jaws or from extracting teeth. No provision of this section shall be construed to prevent regularly enrolled students in and graduates of

tinue to operate their business as they have been doing, they will be subject to the penalties and to an injunction.

The statute now challenged purports to regulate the conduct of a lawful business or profession. Its enactment was an exercise of the police power of the state. To be a constitutional exercise of that power, it must operate in a field wherein the public health, safety and welfare are affected. *State* v. *Porter,* 94 Conn. 639, 642, 110 A. 59. So far as we are aware, the power of the legislature to regulate the practice of dentistry in this state has never been questioned on grounds of constitutionality. See *State* v. *Faatz,* 83 Conn. 300, 76 A. 295; *Jones* v. *Dental Commission,* 109 Conn. 73, 145 A. 570.

The portion of § 1696c hereinbefore quoted contains a description of two separate and distinct series of acts. We shall discuss first the part which specifically concerns the making and repairing of prosthetic dentures, and later in the opinion we will deal with the part which pertains to the advertising of those services. The plaintiffs concede that the construction and repair of prosthetic dentures is a calling affected with the public interest and is a proper field for the exercise of the police power of the state. They claim, however, that the statute under attack is unconstitutional because (1) it serves only the interest of licensed dentists and fails to furnish the public with any protection; (2) its provisions do not clearly define the act or acts which constitute a violation of it; and (3) it is an unwarranted delegation of

---

dental schools approved as provided in this chapter or medical schools approved as provided in chapter 207 from receiving practical training in dentistry under the supervision of a licensed dentist or physician in a dental or medical school in this state or in any hospital, infirmary, clinic or dispensary affiliated with such school."

legislative power to the dental commissioners. For these reasons, the plaintiffs charge that the statute is an unwarranted and arbitrary interference with their right to carry on a lawful business and subjects them to arrest, conviction and penalties for a crime which is stated in general and indefinite terms, all in violation of § 1 of the fourteenth amendment to the federal constitution and of §§ 1 and 10 of article first, as well as articles second and third, of the constitution of Connecticut.

The plaintiffs' claims under (1) and (2) are predicated upon the assertion that while the law classifies the repair and reproduction of prosthetic dentures as acts constituting the practice of dentistry, it excepts these very same acts when they are undertaken on the direction of a duly licensed dentist. The dentist, it argues, is under no duty to examine the patient or the work to be done, either before or after he directs the patient to the dental laboratory. Furthermore, the person whom he directs to do the work need possess no particular skill or training. In short, the requirement of the statute is met when a patient is directed by a dentist to some dental laboratory. Thereafter, it is entirely up to the dentist how much further direction and supervision he shall give. Consequently, no real protection is furnished to the public and no clear and understandable definition of what constitutes a violation of the statute is furnished.

When the constitutionality of legislation is in question, it is the duty of the court to sustain it unless its invalidity is beyond a reasonable doubt. *Gionfriddo* v. *Windsor,* 137 Conn. 701, 705, 81 A.2d 266. All police legislation is subject, in the courts, to the test whether it serves the public health, safety and morals at all and whether it does so in a reasonable manner.

*State* v. *Hillman,* 110 Conn. 92, 105, 147 A. 294. It cannot parade under the banner of service to the commonweal and restrict or destroy private rights in the furtherance of some special interest. The regulation and prohibition it imposes must have a rational relationship to the preservation and promotion of the public welfare. *Carroll* v. *Schwartz,* 127 Conn. 126, 129, 14 A.2d 754; *Gionfriddo* v. *Windsor,* supra, 706; 2 Cooley, Constitutional Limitations (8th Ed.) pp. 1231, 1329 n.6. The case of *Hart* v. *Board of Examiners of Embalmers,* 129 Conn. 128, 132, 26 A.2d 780, illustrates this point aptly. In that case, we held unconstitutional a statute which provided that the board of examiners of embalmers should issue a funeral director's license when an application was made upon the ground that the former licensee was dead or disabled and his financial interest in the funeral home had been transferred to the applicant, who was related to him by blood or marriage. We ruled that such a ground could have no reasonable relation to the public health, safety or welfare. It is a rule of statutory construction, however, that courts are bound to assume that the legislature, in enacting a particular law, did so upon proper motives and to accomplish a worthy objective. *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 107, 90 A.2d 862; *Walsh* v. *Jenks,* 135 Conn. 210, 222, 62 A.2d 773. Furthermore, courts must, if possible, construe a law so that it is effective. *DeMond* v. *Liquor Control Commission,* 129 Conn. 642, 645, 30 A.2d 547; *Connecticut Light & Power Co.* v. *Southbury,* 95 Conn. 242, 247, 111 A. 363; *Balch* v. *Chaffee,* 73 Conn. 318, 320, 47 A. 327. It is to be presumed that legislatures do not deliberately enact ineffective and unconstitutional laws. *Antman* v. *Connecticut Light &*

*Power Co.,* 117 Conn. 230, 237, 167 A. 715; *Sage-Allen Co.* v. *Wheeler,* 119 Conn. 667, 679, 179 A. 195; *State ex rel. Rourke* v. *Barbieri,* 139 Conn. 203, 208, 91 A.2d 773.

The statute prescribes, in effect, that certain acts, described in detail therein, shall not be done by a layman "except on the direction of a duly licensed dentist." The acts forbidden include the placing of any structure or appliance in the human mouth or the attempt to adjust such an appliance, or the delivery of it to anyone other than the dentist "upon whose direction the work was performed." The word "direction" is one of common usage. It means "[a]ct of directing; guidance; management; . . . [t]hat which is imposed by directing; command; also, authoritative instruction; information as to method. . . ." Webster's New International Dictionary (2d Ed.); 12 Words & Phrases (Perm. Ed.) 476. The word, as used in the statute, is peculiarly appropriate and understandable. It sets forth a clear concept of the respective responsibilities of the dentist and the dental laboratory. Moreover, the making, fitting and repair of artificial dentures constitute a calling intimately concerned with the public health. One who pursues it is required to have an accurate knowledge of the physiology of the teeth and the parts of the human body associated with them, as well as a high degree of technical skill. No one has an inalienable right to pursue a profession or vocation which requires special knowledge or peculiar skill and is therefore a proper subject for supervision in the interest of the public welfare. *In re Application of Dodd,* 131 Conn. 702, 705, 42 A.2d 36.

The wording of the statute, when read in the light of the special capability required for the successful

performance of the acts therein described, leads to but one conclusion. The legislative intent, clearly and understandably expressed, is that the acts defined shall constitute the practice of dentistry and shall not be performed unless a duly licensed dentist prescribes them, supervises their performance and approves their result. Without that direction, they are prohibited to a layman. So construed, the statute is designed to serve the public health effectively and is not an unreasonable or arbitrary exercise of the police power. A statute which is otherwise within the police power or serves a public purpose is not unconstitutional merely because it incidentally benefits a limited number of persons. *Silver* v. *Silver,* 108 Conn. 371, 378, 143 A. 240; *State* v. *Heller,* 123 Conn. 492, 500, 196 A. 337; *Lyman* v. *Adorno,* 133 Conn. 511, 516, 52 A.2d 702; *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 106, 90 A.2d 862; *Warner* v. *Gabb,* 139 Conn. 310, 313, 93 A.2d 487.

The plaintiffs claim further that the statute is unconstitutional because it fails to state with sufficient clarity and precision what act or acts constitute a violation of it. The requirement of statutory specificity has the dual purpose of giving adequate notice of the acts which are forbidden and of informing an accused of the nature of the offense charged so that he may defend himself. The terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. *Connally* v. *General Construction Co.,* 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322. If, however, a practicable or sensible effect may be given to a penal statute, it is generally sustained. *State* v. *Andrews,* 108 Conn. 209, 213,

142 A. 840; *State* v. *Zazzaro,* 128 Conn. 160, 165, 20 A.2d 737; *State* v. *Carpenter,* 60 Conn. 97, 102, 22 A. 497; *Pacific Coast Dairy* v. *Police Court,* 214 Cal. 668, 676, 8 P.2d 140; *State Board of Dental Examiners* v. *Savelle,* 90 Colo. 177, 185, 8 P.2d 693; *People* v. *Sarnoff,* 302 Mich. 266, 270, 4 N.W.2d 544. It must afford some comprehensible guide, rule or information as to what must be done and what must be avoided, to the end that the ordinary member of society may know how to comply with its requirements. *People* v. *Grogan,* 260 N.Y. 138, 145, 183 N.E. 273. The statute under discussion meets this test. We hold that it is sufficiently explicit concerning what acts or conduct would be a violation of its provisions to meet constitutional requirements.

While this is a case of first impression in Connecticut, similar legislation has been declared constitutional in other states. *Weill* v. *State ex rel. Gaillard,* 250 Ala. 328, 34 So. 2d 132; *Lasdon* v. *Hallihan,* 377 Ill. 187, 192, 36 N.E.2d 227; *State* v. *Williams,* 211 Ind. 186, 195, 5 N.E.2d 961; *Board of Dental Examiners* v. *Jameson,* 64 Cal. App. 2d 614, 149 P.2d 223; see *Commonwealth* v. *Finnigan,* 326 Mass. 378, 379, 96 N.E.2d 715; *People* v. *Gurevich,* 191 Misc. 338, 339, 75 N.Y.S.2d 919, aff'd, 274 App. Div. 767, 81 N.Y.S.2d 138; 70 C.J.S. 840, § 10 (e).

We have been considering, up to this point, the portion of the statute which pertains to the making, fitting and delivery of prosthetic appliances. We have concluded that it meets constitutional requirements both as a regulation in furtherance of the public health and as the definition of a crime subject to a penalty. We shall now consider the part which contains the prohibition against advertising. The language of this prohibition is all-inclusive. The advertising prohibited is not limited to that

which would announce a willingness to render services in contravention of the law. The verb "advertise" means, generally, "[t]o give notice to; to inform"; in the sense here employed, the definition "[t]o give public notice of; to announce publicly, esp[ecially] by a printed notice; as, to *advertise* a sale; hence, to call public attention to, esp[ecially] by emphasizing desirable qualities, in order to arouse a desire to purchase, invest, patronize, or the like," is probably the meaning best suited to the word as used in the statute. Webster's New International Dictionary (2d Ed.). But the word and this definition of it cover a wide range, from a name and notation of a business or profession painted on a door, through the whole gamut of means and devices for arousing public interest and patronage, up to and including a nationwide radio and television broadcast. Americans are unusually adept in the field of advertising. It is fair to say that one never knows how the next appeal for his patronage of a particular brand of cigarette, tooth paste or false teeth may be enticingly presented. There is no common, generally understood meaning to this all-embracing term. It is of some moment to note that legislation affecting other professions and callings which bans advertising in one form or another contains in more or less detail the particular acts or forms of advertising which are outlawed. General Statutes § 4493, optometrists; § 4522, opticians; § 4485, pharmacists; § 4407, physiotherapy technicians; § 4397, natureopaths; § 4387, chiropractors. Some kinds of advertising, specifically enumerated, are denied by law to dentists. Cum. Sup. 1953, § 1695c.

It is proper for the legislature to forbid the advertising of acts and conduct which it properly de-

fines as the practice of dentistry. In the instant case, however, the statute is so sweeping in its effect that it even forbids the advertising of certain enumerated services which are permitted if they are performed under the direction of a duly authorized dentist. If this law is valid, those in the business generally performed in a dental laboratory are prohibited from doing anything to make known the availability of their services. They are dependent exclusively upon the customers a licensed dentist may send to them. The connection between such a drastic and unreasonable regulation and the public welfare is so tenuous that, upon the principles hereinbefore stated, the portion of the statute relating to advertising cannot be legally justified. We hold this portion to be unconstitutional.

One further claim requires brief discussion. The plaintiff charges that § 1696c, when operative in connection with the other sections of the act concerning the practice of dentistry, is an unconstitutional delegation of legislative power to the dental commission because it leaves it to the discretion of the commission to decide what is a violation of the law. This claim is groundless. The legislation in question, except that portion which we have herein declared to be invalid, provides adequate standards of guidance for the action of the commission, which is merely an administrative agency. *State* v. *Stoddard*, 126 Conn. 623, 628, 13 A.2d 586; *State* v. *Vachon*, 140 Conn. 478, 484, 101 A.2d 509.

To hold that legislation is valid as to one part and invalid as to another is not anomalous but consonant with principles long established. *State* v. *Wheeler*, 25 Conn. 290, 299. Where two or more parts of a statute are challenged, the test is whether they are so mutually connected and dependent as to

indicate a legislative intent that they should stand or fall together. *Branch* v. *Lewerenz,* 75 Conn. 319, 324, 53 A. 658. If that test is applied to this case, it is clear that the part we sustain is separate and distinct from the part we hold to be invalid. They are entirely severable provisions. *Walsh* v. *Jenks,* 135 Conn. 210, 217, 62 A.2d 773; *State* v. *Feingold,* 77 Conn. 326, 333, 59 A. 211; *State* v. *McKee,* 73 Conn. 18, 29, 46 A. 409; *Miller* v. *Colonial Forestry Co.,* 73 Conn. 500, 505, 48 A. 98.

Our answer to the questions propounded in the reservation is that General Statutes, Cum. Sup. 1953, § 1696c, is valid, except the part which contains the prohibition against advertising, which is invalid.

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.